```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                         EASTERN DIVISION
```

Edward Charles Foreman,            :

    Plaintiff,                 :

  v.                               :    Case No. 2:10-cv-1008

Commissioner of Social Security,        JUDGE MICHAEL H. WATSON
                                          Magistrate Judge Kemp
    Defendant.                 :

## REPORT AND RECOMMENDATION

### I. Introduction

Plaintiff, Edward Charles Foreman, filed this action seeking review of a decision of the Commissioner of Social Security denying his application for a period of disability and social security disability benefits.  That application was filed on March 16, 2007, and alleged that plaintiff became disabled on January 15, 2006.

After initial administrative denials of his claim, plaintiff was given a hearing before an Administrative Law Judge on December 23, 2009.  In a decision dated February 23, 2010, the ALJ denied benefits.  That became the Commissioner's final decision on September 16, 2010, when the Appeals Council denied review.

After plaintiff filed this case, the Commissioner filed the administrative record on January 18, 2011.  Plaintiff filed his statement of specific errors on February 16, 2011.  The Commissioner filed a response on April 20, 2011.  Plaintiff filed a reply brief on April 27, 2011, and the case is now ready to decide.

### II. Plaintiff's Testimony at the Administrative Hearing

Plaintiff's testimony at the administrative hearing is found at pages 12 through 28 of the record.  The following is a summary of the facts to which plaintiff (who was 57 years old at the time

of the hearing and has an eleventh grade education) testified.

Plaintiff was a sales representative and then a manager for Hostess Cake and at some point appears to have acquired a Pepperidge Farm franchise.  As a manager, he built displays, covered sales routes for other employees, loaded trucks, and supervised 23 people.  He stopped working in 2006 because he was physically unable to do some of the requirements of the job such as servicing displays or shelving products.

Plaintiff testified to constant pain in his lower back, radiating down his right leg, to pain in his hands, shoulders, and neck, and to serious headaches.  He uses a cane for walking, which was prescribed by his doctor, and also has been prescribed a TENS unit.  He has had cortisone shots and epidural injections, but without significant relief.

He also talked more about his job duties.  He was required to load and unload a truck each day, and boxes of cookies could weigh as much as fifty pounds.  He had to bend and stoop.  He has little energy and suffers from sleep apnea.  He uses a C-PAP machine at night, but naps several times during the day.  His physical problems have caused him to isolate himself and have affected his concentration.  Sitting in one place is difficult due to pain.

### III.  The Medical Records

The medical records in this case are found beginning on page 212 of the administrative record.  They can be summarized as follows.

Plaintiff's knees, hands and feet were x-rayed on September 26, 2006.  The most significant findings were some degenerative changes in the wrists; the findings concerning plaintiff's knees and feet were minimal.  A physical examination done by Dr. Schlessel yielded an impression of chronic musculoskeletal pain with some tender points noted as well as a limited lumbar range

of motion and paralumbar tenderness.  Dr. Schlessel suspected a fibromyalgia component to plaintiff's complaints of pain, swelling and stiffness in his joints.  Prior office notes from plaintiff's treating physician, Dr. Koch, show treatment for depression and sleep apnea.

   Plaintiff was evaluated by Mr. Loomis, a psychologist, on May 18, 2007.  He reported suffering from high blood pressure, arthritis, degenerative joint disease, gastroesophageal reflux disease, and sleep apnea.  He had not sought mental health treatment but his family doctor had prescribed an antidepressant.  He did not report any problems getting along with others but did describe a lack of energy and a low sense of self worth.  He described his daily activities as including driving and performing various household chores.  He also visited with neighbors.  Mr. Loomis diagnosed an adjustment disorder with mixed anxiety and depressed mood and rated plaintiff's GAF at 60-65.  His most significant impairment was in the area of coping with work stress; that impairment was described as mild to moderate based on symptoms of anxiety and depression coupled with plaintiff's perception of his physical condition.  A subsequent state agency reviewer, Dr. Melvin, concluded that any mental impairment was not severe, explaining that plaintiff's "psychological symptoms are, at most, mild."  (Tr. 314).

   Dr. Koch referred plaintiff to Dr. Kemp for a neurological assessment, which took place on June 18, 2007.  Plaintiff reported back pain, leg pain, severe leg cramps, and difficulty walking.  An MRI was reviewed and showed degenerative changes at L4-5 and L5-S1 with some disc bulging.  Any stenosis was mild to moderate.  His history was consistent with spinal stenosis but vascular disease was also possible.  He was referred for further testing.  A subsequent lumbar myelogram showed no evidence of instability but some left-sided nerve root sleeve amputation, and

a CT scan showed degenerative changes with bilateral recess stenosis at L4-5.  Dr. Kemp subsequently reported that the vascular studies were normal and that there was not any clinically significant spinal stenosis.  He saw no need for surgical intervention and suspected a generalized arthritic process.

   Dr. McCloud, also a state agency reviewer, assessed plaintiff's physical capacity on July 11, 2007.  He concluded that plaintiff could lift 50 pounds occasionally and 25 pounds frequently and could stand, walk and sit for six hours during the work day.  He did not believe there were any postural or manipulative limitations and thought plaintiff's statements about difficulty standing or getting up from a kneeling or stooping position were only "partially credible," as was his statement that he could not walk for more than five minutes.  (Tr. 355-56).

   Dr. Koch completed a form on or about August 14, 2007, and attached many of his office notes.  On the form, he stated that plaintiff could not walk or stand for more than five minutes.  He also wrote a prescription note on December 26, 2007, stating that "it is medically necessary for patient to carry his cane & TENS unit at all times for low back pain."  (Tr. 774).  That exhibit (Exhibit 29F) does not appear in the list of exhibits considered by the ALJ, however.

   Plaintiff was admitted to the hospital on June 14, 2008, for treatment of an acute myocardial infarction.  He was also diagnosed with severe coronary artery disease.  He was discharged in stable and improved condition after a stent was implanted.  He was also hospitalized for treatment for chronic major depression in July of 2009; he had been seeing a mental health counselor for some time prior to that for treatment for recurrent, atypical depression and alcohol abuse.  Finally, a form prepared by Dr. Schlessel and dated February 19, 2010, showed that plaintiff was

essentially limited to sedentary work with a sit-stand option but also would miss four or more days of work per month.  (Tr. 698-702).  Some additional records, including another hospitalization for plaintiff's cardiac condition, were submitted after the date of the ALJ's decision.

### IV.  The Vocational Testimony

Mr. Hartung, a vocational expert, also testified at the administrative hearing.  He characterized plaintiff's past work as a route sales driver as medium and semi-skilled.  His supervisory job was skilled and light, and his franchise owner position was skilled and medium.  If plaintiff could do a full range of medium work, he could return to those jobs.  If, however, plaintiff's ability to lift and carry were more restricted, or if he had to take unscheduled breaks or naps during the day, he could not do any of his past work.  (Tr. 24-26).

### V.  The Administrative Law Judge's Decision

The Administrative Law Judge's decision appears at pages 35 through 46 of the administrative record.  The important findings in that decision are as follows.

The Administrative Law Judge found, first, that plaintiff met the insured status requirements of the Social Security Act up to December 31, 2010.  The ALJ next found that plaintiff had not engaged in substantial gainful activity from his alleged onset date of January 26, 2006 forward.

As far as plaintiff's impairments are concerned, the ALJ found that plaintiff had severe impairments including arthritis, degenerative disc disease, stenosis, coronary artery disease, and status post heart attack.  He also found that these impairments did not meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to the next step of the sequential evaluation process, the ALJ found that plaintiff had the residual functional capacity to perform a full range of medium work. That was the exertional level of plaintiff's prior work, and the vocational expert testified that someone with only that limitation could return to that work. As a result, the ALJ concluded that plaintiff had not demonstrated an entitlement to benefits.

VI. <u>Plaintiff's Statement of Specific Errors</u>

In his statement of specific errors, plaintiff raises the following issues. First, he contends that the ALJ erred by relying on the report of Dr. McCloud, who never examined plaintiff and who did not have the benefit of the entire medical record when he prepared his report. Second, he argues that insufficient weight was given to the opinions of the treating physicians. Third, he asserts that his need to use a cane was not properly factored into the ALJ's residual functional capacity finding. Fourth, he takes issue with the ALJ's failure to find that he suffered from fibromyalgia. Fifth, he contends that the ALJ did not accurately evaluate his credibility or his subjective complaints of pain. Sixth, and last, he argues that it was error to have relied on the vocational testimony because various physical and mental impairments were not included in the questions asked to him. The Court reviews that decision under this legal standard:

<u>Standard of Review.</u> Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Company v. NLRB</u>, 305 U.S. 197, 229 (1938)). It is "'more than a mere

scintilla.'" Id. LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976). The Commissioner's findings of fact must be based upon the record as a whole. Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985). Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

  Plaintiff first takes issue with the extent to which the ALJ relied on the opinion of Dr. McCloud, who never treated or examined him. In particular, he notes that many medical records were submitted after Dr. McCloud reviewed the file, and argues that the ALJ did not comment on any of them when he determined that Dr. McCloud's opinion was the most credible. He also faults the ALJ for accepting Dr. Melvin's opinion because the later notes of mental health treatment were not reviewed by him. Because this argument is intertwined with the issue concerning the weight given to the opinions of the treating doctors, the Court will review the first two assignments of error together.

  The ALJ reviewed the reports of plaintiff's various physical impairments and concluded that objective testing showed only mild degenerative or arthritic changes in the spine. Also, his physicians consistently reported a full range of motion for plaintiff's joints except for some loss of range of motion in the

lumbar spine.  Tests such as straight leg raising were normal as was plaintiff's gait.  He appeared to have no complications after his heart attack and did not report any weakness or shortness of breath.  Given all of this, the ALJ determined that Dr. Koch's opinion was unsupported by the medical record and also in conflict with plaintiff's statements concerning his activities of daily living.  The ALJ noted the absence of any prescription for either a TENS unit or a cane.  Consequently, the ALJ determined that Dr. McCloud's opinion was consistent with the objective medical evidence and was entitled to be given the greatest weight.  Dr. Schlessel's opinion was not mentioned.  Additionally, the ALJ adopted Mr. Loomis' opinion and found that any psychological impairment was not severe.

As far as the treating physicians are concerned, it is black-letter law that a treating physician's opinion is entitled to weight substantially greater than that of a nonexamining medical advisor or a physician who saw plaintiff only once. Lashley v. Secretary of H.H.S., 708 F.2d 1048, 1054 (6th Cir. 1983); Estes v. Harris, 512 F.Supp. 1106, 1113 (S.D. Ohio 1981). However, the weight given such a statement depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record.  20 C.F.R. §404.1527; Harris v. Heckler, 756 F.2d 431 (6th Cir. 1985).  In evaluating a treating physician's opinion, the Commissioner may consider the extent to which that physician's own objective findings support or contradict that opinion.  Moon v. Sullivan, 923 F.2d 1175 (6th Cir. 1990); Loy v. Secretary of HHS, 901 F.2d 1306 (6th Cir. 1990).  The Commissioner may also evaluate other objective medical evidence, including the results of tests or examinations performed by non-treating medical sources, and may consider the claimant's activities of daily living.  Cutlip v. Secretary of HHS, 25 F.3d 284 (6th Cir. 1994).

-8-

Even if there are good reasons for rejecting or discounting the opinion of a treating physician, "[t]here is an additional procedural requirement associated with the treating physician rule." <u>Rogers v. Comm'r of Social Security</u>, 486 F.3d 234, 242 (6th Cir. 2007), Under this procedural requirement, the Commissioner must clearly articulate both the weight given to the treating physician's opinion and the reasons for giving it that weight.  Two reasons underlie this procedural requirement.  First, it assists the claimant to understand why the Commissioner has concluded, contrary to what the claimant has been told by his or her treating doctor, that the claimant is not disabled.  Second, it ensures that the Commissioner has correctly applied the substantive law applicable to opinions of treating sources and that an appellate court can review that application in a meaningful way.  <u>Id</u>.

Where the Commissioner does not follow this procedural requirement at the administrative level, the Court cannot simply fill in the required analysis based on the evidence of record.  Rather, "[b]ecause of the significance of the notice requirement in ensuring that each denied claimant receives fair process, a failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record."  <u>Id</u>. at 243, <u>citing Wilson v. Comm'r of Social Security</u>, 378 F.3d 541, 544 (6th Cir. 2004).

Here, at least as far as Dr. Koch is concerned, the ALJ both had and articulated valid reasons for discounting his opinion.  Dr. Koch imposed severe limitations on plaintiff's ability to do any physical activities.  As the ALJ noted, there are simply no objective tests, clinical findings, or other support for that

type of limitation. The reports from the specialists to whom plaintiff was referred do not appear to suggest such severe limitations, and, as the ALJ also noted, plaintiff testified to daily activities that are inconsistent with Dr. Koch's views. Clearly, no error was committed when the ALJ decided not to give Dr. Koch's views controlling or even significant weight.

The issue concerning Dr. Schlessel's opinion is more troubling. The Commissioner argues that he was not a treating source but that, even if he was, this is one of those rare cases where, under Wilson, the error in not articulating reasons for discounting Dr. Schlessel's report can be treated as harmless. That may be the case if the opinion which is not mentioned by the ALJ is "so patently deficient that the Commissioner could not properly credit it" or if the administrative decision "has met the goal of ... the procedural safeguard of reasons." Wilson, 378 F.3d at 547. Plaintiff, on the other hand, disputes that any error was harmless, and also cites to Blakley v. Commissioner Of Social Sec., 581 F.3d 399 (6th Cir. 2009) for the proposition that it was error for the ALJ not to explain why this opinion, which was also not reviewed by Dr. McCloud, did not affect the weight given to Dr. McCloud's opinion.

Blakley involved a case where the ALJ adopted the opinions of a consultative examiner and two state agency physicians, the last of which was rendered in September, 2005. However, after that date, the claimant continued to seek treatment, and in December, 2005, his treating orthopedic surgeon limited him to a level of work that was inconsistent with the limitations found by the prior examiners and reviewing physicians. An additional consultative examination was performed the following year and the results of that examination also conflicted with the views expressed in 2005. After finding that the ALJ did not adequately articulate reasons for discrediting the opinions of the

claimant's treating sources, the Court of Appeals also held that the ALJ had not adequately explained why greater weight was given to the opinions of physicians who had not reviewed the entire record, especially when that record included much additional treatment history and opinions based on that history.

Here, as the Commissioner points out, Dr. Schlessel's opinion consists of boxes checked on a form, and he did not specifically describe the reasons for the limitations he imposed. Further, Dr. McCloud clearly had before him the same test results which Dr. Schlessel used to derive his opinion, and the ALJ reviewed not only those test results but additional medical evidence, including evidence going beyond what Dr. McCloud had before him, when he explained why Dr. Koch's opinion was not given much weight.  This latter explanation cures any issue under Blakley, because it demonstrates that the ALJ did consider that additional evidence which, according to plaintiff, made Dr. McCloud's opinion less reliable.

The Wilson question is a closer one.  It is difficult to say that Dr. Schlessel's opinion could not possibly have been credited, although given the fact that it was one of the reports that apparently formed the basis for Dr. Koch's opinion and Dr. Koch's opinion was deemed wholly unsupported by the record, it is extremely unlikely that the ALJ would have given it much weight. That seems especially likely to be true because Dr. Schlessel did not find any evidence of most of the problems he tested plaintiff for, did not really prescribe any treatment beyond some pain medication, only saw plaintiff two or three times, and did not indicate what symptoms or test results his opinion was based on. Nevertheless, the limitations he imposed were not as severe as those imposed by Dr. Koch, and not completely inconsistent with plaintiff's daily activities, so that the ALJ would have had to have used a slightly different rationale for rejecting that

-11-

opinion.

Nevertheless, the Court concludes that, on this record, the goal of §1527(d)(2) has indeed been met even though there may not have been strict compliance with that regulation.  The detailed discussion of Dr. Koch's opinion, the reasons given for discounting it, and the reasons advanced in support of the ALJ's decision to give Dr. McCloud's opinion controlling weight are sufficiently related to Dr. Schlessel's opinion as well so that the Court has a rationale to review, and the plaintiff has been provided with an explanation about why Dr. McCloud was deemed the most believable physician.  That explanation would not have been substantially different had Dr. Schlessel's opinion (as opposed to his reports) been specifically mentioned.  Thus, to the extent that Dr. Schlessel could be considered a treating source, the error in failing to explain why his opinion was rejected is harmless, and a remand on that issue would be an exercise in futility.

Next, plaintiff argues that his use of a cane was medically necessary but was not factored into the ALJ's findings.  He notes that one of the items which Dr. Schlessel checked on the form he completed was that plaintiff needed to use a cane while engaging in occasional walking.  The vocational expert was not asked to assume this limitation, so there is no testimony in the record concerning how the use of a cane would affect plaintiff's ability to perform his past work or other jobs at the medium exertional level.  The Commissioner responds, briefly, that the ALJ's conclusion that no one had prescribed plaintiff with a cane was supported by the record and that most treatment notes indicated his gait was normal and did not state that he was using, or needed to use, a cane.

Social Security Regulation (SSR) 96-9p provides that the occupational base for an individual who needs to use a cane or

other hand-held assistive device "may be significantly eroded" and that it may be necessary to obtain vocational evidence on that issue.  The regulation also states, however, that "there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed."  The ALJ, without specifically mentioning Dr. Schlessel's report, states simply that "there is no evidence in the record of the claimant requiring any ambulatory assistance or being prescribed one." (Tr. 40).  It can be inferred from that statement that the ALJ overlooked the notation in Dr. Schlessel's report, even though that report is one of the exhibits that the ALJ lists as having reviewed.

It has been held that "isolated notations" in the medical record concerning the use of a cane are not enough to trigger the application of SSR 96-9p.  See, e.g., Rivera v. Astrue, 2009 WL 235353, *5 (E.D. Pa. January 29, 2009).  Certainly, this single note, made long after Dr. Schlessel examined plaintiff and unsupported by any reference to a condition which would affect plaintiff's balance or strength to the point where he would need to use a cane, can properly be characterized as an "isolated notation."  Although Dr. Koch apparently prescribed a cane, the evidence of that fact was not before the ALJ, so the ALJ could hardly have erred by finding that such a prescription had never been issued.  And this is not a case like Parker v. Astrue, 597 F.3d 920 (7th Cir. 2010); there, the issue was not whether there was or was not medical documentation for the use of cane so that vocational testimony had to be obtained on the subject, as required by SSR 96-9p, but whether the claimant's use of a cane without a prescription was "suspicious" and called her credibility into doubt.  Overall, there is substantial support in this record for the ALJ's finding that plaintiff's use of a cane

-13-

did not satisfy the requirements of SSR 96-9p and that the vocational expert did not have to be asked to take that use into account in evaluating plaintiff's ability to perform his past relevant work.

Plaintiff next argues that the ALJ erred by failing to find that he suffered from fibromyalgia. His entire argument on this point appears to be that certain tender points (one of the hallmarks of fibromyalgia) were found during Dr. Schlessel's examinations. Dr. Schlessel, however, never diagnosed fibromyalgia (nor did any other physician), but simply stated that there was a "suggestion" of that disease. Given the record, the ALJ did not err in finding that plaintiff did not suffer from fibromyalgia.

Plaintiff's fifth argument is that his credibility was not properly evaluated. In support of this argument, he contends that the ALJ made factual errors in interpreting the record as to his daily activities, noting that many of the activities which the ALJ found he could do were things he was capable of before, and not after, his accident. He also argues that the ALJ misstated the types of medications he took for his pain, and that the combination of these factual errors and the misinterpretation of the objective medical evidence substantially undermines the ALJ's finding that plaintiff's testimony could not be credited fully.

The evaluation of a claimant's credibility is largely committed to the discretion of the Commissioner, and the findings made in that regard are entitled to "great weight and deference." Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997). However, "[i]f an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." Felisky v. Bowen, 35 F.3d 1027, 1036 (6th Cir. 1994). Further, those reasons must be tied to evidence in the record.

-14-

Id.

Here, the ALJ explained his credibility finding as follows. First, he concluded that the objective medical evidence did not support plaintiff's claim of debilitating pain, noting the relatively benign findings on most objective tests and clinical examinations, which contradicted not only plaintiff's testimony but Dr. Koch's opinion that plaintiff could walk for only five minutes at a time.  He also noted that plaintiff had not been recommended for surgery and was treated "primarily" by over the counter medications, and that he had not done any physical therapy or strengthening exercises despite recommendations that he do so.  (Tr. 41).  Finally, the ALJ described plaintiff's daily activities as inconsistent with total disability, noting that plaintiff "is able to cook, do the dishes, laundry, vacuum, make the beds and perform light housekeeping" and can "read, write, drive, and independently bathe and dress himself and attend to his own personal hygiene."  Further, he "regularly visits with family and friends and attends school functions, namely T-ball and baseball games being played by his grandchildren."  (Tr. 42).  As support for these findings, the ALJ cited to exhibits 4E, 5E, 12E, and 15E.

Exhibit 4E states that plaintiff can do dishes, shower, vacuum, and fix dinner.  Under "Hobbies and Interests" he listed watching televison, listening to music, sitting outside, playing on the computer, rebuilding tractors, mowing the lawn, yard work, and playing music, stating that he was able to do these things "all the time, very well."  (Tr. 142).  He also stated he went to ball games with his grandchildren.  Similar activities are described in Exhibit 5E.  The ALJ does not appear to have made any factual error by referring to these statements in his credibility finding.  Further, the ALJ did not find, as plaintiff suggests, that he has never taken anything stronger than over the

-15-

counter medications for his pain, only that such medications have been the "primary" method of treatment. Again, there is support in the record for this finding. Because the ALJ both made an express credibility finding and, contrary to plaintiff's argument, it is based on evidence in the record, this Court cannot disturb that finding.

Plaintiff's sixth and final argument is that the hypothetical question asked to the vocational expert was incomplete. The matters supposedly left out deal with plaintiff's need to use a cane and his psychological impairment. The Court has already determined that the ALJ did not err in the way in which these issues were evaluated, so there was no need to incorporate such limitations into the questions asked to the vocational expert. Therefore, this last assignment of error also lacks merit, and the Court concludes that the Commissioner's decision, in its entirety, was supported by substantial evidence.

## VII. Recommended Decision

Based on the above discussion, it is recommended that the plaintiff's statement of errors be overruled and that the Clerk be directed to enter judgment in favor of the defendant Commissioner of Social Security.

## VIII. Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings

or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge
